## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **TABITHA TENNANT, as Personal Representative of the Estate of DAVID SHAUN CORDELL,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CASE NO.: _____** |
| **CARMEN CARGILE, WEXFORD HEALTH SOURCES, INC., MICHAEL BOROWICZ, MD, JANE DOE, and JOHN DOE,** | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW,** the Plaintiff, Tabitha Tennant, as Personal Representative of the Estate of David Shaun Cordell, by and through the undersigned counsel, and alleges the following:

## PRELIMINARY STATEMENT

Plaintiff, Tabitha Tennant, is bringing this action as Personal Representative of the Estate of David Shaun Cordell ("Mr. Cordell" or "the decedent"). At all times relevant to this action, Mr. Cordell was in the custody of the Alabama Department of Corrections ("ADOC"), being housed at Staton Correctional Facility ("Staton") in Elmore, Alabama. As alleged more fully herein, Mr. Cordell was the victim of several vicious and brutal attacks by fellow inmates from August to November of

1

2022. After being attacked on several occasions, Mr. Cordell's health noticeably and drastically declined. He lost a significant amount of weight, was immobile, and was disoriented and incoherent. On December 17, 2022, Mr. Cordell passed away. He was only forty-seven years old.

## PARTIES

1. **Plaintiff Tabitha Tennant ("Plaintiff")** is a citizen of the United States, a citizen of the State of Alabama, and is over nineteen (19) years of age. Plaintiff is the sister of the decedent, David Shaun Cordell, who was a citizen of the United States, a citizen of the State of Alabama and was housed at Staton Correctional Facility at the time of his death.

2. **Defendant Carmen Cargile ("Defendant Cargile")**, is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At the time of the incidents that form the basis of this Complaint and Mr. Cordell's subsequent death, Defendant Cargile was employed as Correctional Warden at Staton Correctional Facility. As Correctional Warden, Defendant Cargile was responsible for the operation, control, and safety at Staton. At all times relevant to this action, Defendant Cargile acted under the color of state law and in the scope of her employment.

3. **Defendant Wexford Health Sources, Inc. ("Defendant Wexford")** was, at all times relevant to this action, contracted by the ADOC to provide constitutionally

adequate and necessary medical care to incarcerated individuals in the ADOC's custody, including those at Staton. Wexford assumed and performed an essential duty of the State of Alabama through its agreement to provide constitutionally adequate and necessary care to inmates in the ADOC's custody.

4. **Defendant Michael Borowicz, MD ("Defendant Borowicz")** is a citizen of the United States, a citizen of the state of Alabama, and is at least nineteen (19) years of age. At all times relevant to this action, Defendant Borowicz was employed as the Medical Director at Staton Correctional Facility. As Medical Director, Defendant Borowicz assumed and performed an essential duty of the State of Alabama to direct and provide necessary, adequate, proper, and timely healthcare to inmates housed at the facility. He was also the final policymaker and decision maker for Wexford in matters related to the provision of medical care at Staton.

5. **Defendant Jane Doe ("Jane Doe")** is a citizen of the United States, a citizen of the state of Alabama, and is at least nineteen (19) years of age. At all times relevant to this action, Defendant Jane Doe was employed as a nurse at Staton Correctional Facility. As a nurse at Staton, Defendant Jane Doe (whether singular or plural) assumed and performed an essential duty of the State of Alabama to provide necessary, adequate, proper, and timely healthcare to inmates housed at the facility.

6. **Defendant John Doe ("John Doe")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant to this action, Defendant Doe (whether singular or plural) was/were the correctional officer(s) who refused to allow Mr. Cordell to access the infirmary and chow hall, despite his clear physical deterioration on several occasions from October until November of 2022

7. As set forth in more detail below, Defendants' actions and omissions to act recklessly caused the alleged deprivation of Mr. Cordell's constitutional rights by their deliberate indifference and failure to act.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 1988(a), as this action seeks redress for a violation of the decedent's Eighth and Fourteenth Amendment rights under the Constitution of the United States, pursuant to 42 U.S.C. § 1983.

9. This Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367(a), as they arise from the same case or controversy and are so related to Plaintiff's 42 U.S.C. § 1983 claims.

10. Venue is proper in the United States District Court for the Middle District of Alabama, pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events

and omissions that give rise to Plaintiff's claims occurred within this Court's judicial district.

## FACTUAL ALLEGATIONS

### I.    Mr. Cordell's Medical History.

11. At all times relevant to this action, Mr. Cordell was in custody of the ADOC.

12. Sometime in 2021, Mr. Cordell was transferred to Staton Correctional Facility in Elmore, Alabama.

13. Upon being assigned to any institution in the ADOC, inmates must be medically screened so that their medical diagnoses and injuries, if applicable, are noted.

14. Upon Mr. Cordell's housing at Staton, medical staff and ADOC staff were made aware of Mr. Cordell's history of epilepsy.

15. More specifically, on March 3, 2022, Mr. Cordell wrote a request for accommodations for a bottom bunk due to his history of seizures. The request was "referred to medical."

16. Mr. Cordell was approved for a bottom bunk starting on April 4, 2022.

17. From that moment on, Defendant medical staff, and all healthcare employees, had actual or, at the very least, constructive knowledge of Mr. Cordell's epilepsy.

### II.    Defendants' Deliberate Indifference to Mr. Cordell's Pain and Suffering.

18. In the months leading to his death, Mr. Cordell suffered unfathomable physical, mental, and emotional anguish. He was subjected to several beatings by fellow inmates as Defendant Cargile failed to intervene and protect him from further beatings. He was denied constitutionally adequate medical care after the beatings from Defendant Wexford, through the decisions of Defendants Borowicz and Jane Doe. Finally, he was denied access to the infirmary and dining hall on several occasions from Defendant John Doe although he had to be physically carried by other inmates to meet his basic human needs.

19. Sometime in August of 2022, Mr. Cordell was beaten by fellow inmates. This quickly became the first of many beatings.

20. On or around October 17, 2022, Mr. Cordell was again brutally assaulted and beaten by fellow inmates. He was reportedly taken to the healthcare unit via stretcher and was unresponsive. Records indicated that he "peed on himself" when being removed from the stretcher.

21. Medical records indicated abrasions to the left front side and top of his head. He was also unable to speak clearly and had blurred vision.

22. Defendant Borowicz, who knew or should have known of Mr. Cordell's history of epilepsy, approved him to be evaluated but did not ensure that he was housed in the infirmary to recover from his apparently clear head trauma. Upon information and belief, it was a policy, practice, or custom of Staton's medical

staff to fail to ensure that inmates exhibiting signs of trauma, such as Mr. Cordell, were housed in the infirmary for close evaluation.

23. Because of Mr. Cordell's history of epilepsy, that Defendants Wexford, Borowicz, and Jane Doe knew or should have known of, Mr. Cordell should have been closely monitored for his safety and well-being after this attack.

24. Even if not housed in the infirmary, Defendant Borowicz had the authority and obligation to ensure that Mr. Cordell receive and necessary medical care for his clearly described head trauma.

25. As medical director and the final policymaker and decision maker for Wexford at Staton, Defendant Borowicz failed to ensure that either himself or any of his subordinate staff, including Defendant Jane Doe, whether singular or plural, rendered proper and timely follow-up care beyond this initial evaluation. Upon information and belief, it was a policy, practice, or custom of Staton's medical staff to fail to provide follow-up care beyond the initial evaluations for inmates.

26. Furthermore, after being beaten so severely, Mr. Cordell's living assignment should have been changed to protect him from his aggressors.

27. However, Mr. Cordell was not closely monitored or protected. He was briefly medically evaluated and returned to the very dorm he had been assaulted in.

28. On October 27, 2022, around 6:10 pm, Mr. Cordell called Plaintiff and was incoherent. The only words that Plaintiff could make out was that he was badly injured and needed help.

29. Upon information and belief, Mr. Cordell was attacked because inmates wanted the soda and lemon pie he had bought from the canteen. He was beaten severely and stomped in his head. After this assault, Mr. Cordell grew weaker by the day and could barely walk.

30. On October 28, 2022, around 5:52 pm, Mr. Cordell called Plaintiff again and stated that he had been badly beaten by six inmates and was having trouble breathing. Mr. Cordell was crying and in a lot of pain.

31. On October 29, 2022, around 11:31 am, Mr. Cordell called Plaintiff requesting money to pay an inmate. He owed the inmate approximately $290.00.

32. An inmate drug Mr. Cordell to the phone and forced him to call Plaintiff. She paid the inmate $170.00 to save Mr. Cordell's life. She was forced to pay another $35.00 the following day.

33. On October 30, 2022, October 31, 2022, November 3, 2022, and November 5, 2022, Mr. Cordell called Plaintiff to state that he was in a lot of pain. It was clear that he was suffering and not being protected from the inmates who had brutally beaten him. He was hysterical.

34. On November 6, 2022, around 4:57 pm, Mr. Cordell called Plaintiff and stated that he was afraid for his life and that he "wasn't going to make it."

35. On November 7, 2022, medical records noted that Mr. Cordell had gotten "beat up" again. At this point, Defendant Borowicz and/or Defendant Jane Doe, whether singular or plural, should have ensured that Mr. Cordell was being closely monitored and housed in the infirmary. Nevertheless, neither did.

36. On November 11, 2022, around 4:36 pm, Mr. Cordell called Plaintiff and told her that he was bleeding from his back.

37. On November 12, 2022, around 10:27 am, Mr. Cordell followed up with Plaintiff and told her that he went to medical for care and treatment and received none. Upon information and belief, Defendant Jane Doe turned him away and sent him back to his dorm without any medical intervention. Upon information and belief, it was a policy, practice, or custom of Staton's medical staff to turn away inmates who required medical care and treatment without rendering any care.

38. On November 13, 2022, Mr. Cordell called Plaintiff three times. He knew that his health was declining but was refused any medical care from the medical staff at the prison.

39. On November 16, 2022, around 9:55 am, Mr. Cordell called Plaintiff. That is the last time she spoke with her brother.

40. On November 20, 2022, Mr. Cordell had a body chart taken. He stated, "I don't know what happened." Medical records noted that he was unsteady, his eyes were closed, his speech was unclear, his hand grips were weak, and his color was "gray."

41. Sometime in November of 2022, Heath Baker, who was also incarcerated at Staton, carried Mr. Cordell to the infirmary himself. He was turned away by Defendant John Doe. At this time, Mr. Cordell's motor skills were completely gone, and he was having seizures.

42. Upon information and belief, and at the minimum of two times, Mr. Cordell presented to the infirmary with an unsteady gait, slurred speech, abrasions, and an inability to remember details around the episode. With knowledge of Mr. Cordell's history of epilepsy, Defendant medical staff, including Defendants Borowicz and Jane Doe, knew or should have known that his medical care should have been taken more seriously.

43. After Mr. Cordell was turned away from the infirmary, he continued to deteriorate. He was too weak to walk or mobilize, so he laid helpless on his bunk.

44. Mr. Cordell could not shower himself, go to chow to eat, or defend himself against inmates who continuously beat him during this time.

45. In fact, other inmates carried Mr. Cordell to chow, the restroom, and the infirmary, where he was turned away by Defendant John Doe, whether singular

10

or plural. Additionally, Defendant John Doe would not allow Plaintiff to be carried to the infirmary or to the dining hall by other inmates.

46. Another fellow inmate named Robert Ashley often physically carried Mr. Cordell to the restroom. He even attempted to get Mr. Cordell medical attention but was unsuccessful. Mr. Ashley described Mr. Cordell as "shriveled up" and in visibly poor health in November of 2022.

47. Plaintiff called Defendant Cargile every day for about a month to report Mr. Cordell's pain and suffering, deteriorating medical condition, the constant assaults, and the extortion. Her pleas for help were constantly ignored.

48. Plaintiff would often be sent to Defendant Cargile's voicemail where she would leave detailed messages to return her call. Despite having actual, or at the very least constructive, knowledge of Mr. Cordell's condition, Defendant Cargile failed to act altogether. She did not ensure his transfer to another living assignment and did not ensure that medical care was rendered.

**III.    Mr. Cordell's Death.**

49. In the months leading up to Mr. Cordell's death, he lost a significant and noticeable amount of weight.



**Photo A - Mr. Cordell in 2019.**



**Photo B – Mr. Cordell in 2020.**



**Photo C – Mr. Cordell in December of 2022.**

50. Due to Defendants' collective deliberate indifference, Mr. Cordell's medical condition quickly deteriorated. He was weak, disoriented, and clearly suffering. He was finally transported to Baptist Medical Center South ("Baptist South") on November 24, 2022.

51. Upon his arrival at Baptist South, the history of present illnesses stated, amongst other things, that "Mr. Cordell was bedbound, unable to move and weak for the past two days. . .." The records also noted that Mr. Cordell appeared to be "too weak" to answer the questions asked of him.

52. Mr. Cordell was diagnosed with the following: 1) Acute hypoxic hypercapnic respiratory failure, 2) Hypercalcemia, 3) AKI versus AKI on CKD, 4) SIRS criteria, 5) Lower extremity edema bilaterally, 6) History of seizures, 7) Tolerable constipation, and 8) Probable carcinoma; unknown primary.

53. Medical records noted several lesions of Mr. Cordell's spine, pelvis, and ribs to which he was unaware. They also noted multiple fractures. Upon information and belief, the fractures were sustained in the beatings he took in the months prior to being admitted into the hospital.

54. By the time Mr. Cordell was transferred to Baptist South, he had no meaningful chance of recovery.

55. Although his medical records clearly indicated otherwise, Defendant Cargile maliciously and deliberately told Plaintiff that Mr. Cordell's physical condition was improving after he was admitted to Baptist South.

56. On December 17, 2022, at 23:56 hours, Mr. Cordell was pronounced dead.

## CAUSES OF ACTION

## FEDERAL CLAIMS

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 - DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND TREATMENT

57. Plaintiff adopts and re-alleges paragraphs 1, 4-5, 7-8, 10-25, 27, 35-43, 46, 49-54, and 56 of this Complaint as if fully set forth herein.

58. This Count applies to Defendants Borowicz and Jane Doe.

59. As described more fully above, Mr. Cordell had an objectively serious medical need as evidenced from his epilepsy diagnosis to his clear drastic physical deterioration in the months leading to his death.

60. Mr. Cordell's serious medical need was further clearly evidenced by his inability to eat, walk, relieve himself, and speak coherently.

61. Defendants, who were obligated to provide reasonable and necessary medical treatment to individuals in ADOC custody, had notice of the seriousness of Mr. Cordell's medical needs based on his medical history and medical records from October 2022 until his death.

62. Defendants also knew or should have known that Mr. Cordell, who was significantly declining, was at risk of further serious harm and irreparable injury if he did not receive prompt, reasonable, and necessary care to address his declining state.

63. Despite such knowledge, Defendant Borowicz failed to ensure that Plaintiff, who had a history of epilepsy and clearly experienced head trauma, was closely monitored or housed in the infirmary after the October 17, 2022, attack.

64. Defendant Borowicz, the medical director who has the final policymaking and decision-making authority regarding the provision of healthcare at Staton, failed to ensure that Mr. Cordell was transported to an outside facility sooner during the weeks of his rapid deterioration.[1]

65. Despite such knowledge, Defendant Jane Doe, whether singular or plural, turned Mr. Cordell away from the infirmary and failed to provide him with any medical care that even a lay person could see. Defendant Jane Doe, whether singular or plural, also turned Mr. Cordell away from the infirmary when he was so weak that he had to be carried by other inmates.

---

[1] "Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d at 1280. (See *Harris v Coweta Cty.*, 21 F.3d 388, 393-94 (11th Cir. 1994)).

66. Defendants' gross failure to provide adequate and timely medical care, directly and proximately caused Mr. Cordell's prolonged physical deterioration and pain and suffering.

67. Defendants' misconduct described in this Count was objectively unreasonable and was done intentionally, with malice, and/or with reckless indifference to Mr. Cordell's constitutional rights.

68. As a direct and proximate result of Defendants' malice, reckless indifference and/or deliberate indifference to Mr. Cordell's medical needs, his physical condition deteriorated, his injuries were exacerbated, he was subjected to pain and suffering, and he subsequently died.

## COUNT II: VIOLATION OF 42 U.S.C. 1983 – DELIBERATE INDIFFERENCE

69. Plaintiff adopts and re-alleges paragraphs 1, 3, 7-8. 10-18, 20-25, 35-38, 40-46, and 49-56 of this Complaint as if fully set forth herein.

70. This Count applies to Defendant Wexford.

71. Defendant Borowicz was the final policymaker and decision maker for Wexford in all matters relating to the provision of medical care at Staton. Moreover, Defendant Jane Doe, whether singular or plural, also made final decisions regarding the level of treatment, if any, an inmate at Staton received if they requested, or clearly required, care.

72. Defendant Wexford, on its own or, alternatively, through the final policymaking decisions of Dr. Borowicz and Defendant Jane Doe, whether singular or plural, had a policy, practice, or custom of delaying or denying incarcerated individuals, like Mr. Cordell, of access to necessary, adequate, and life-sustaining medical care.

73. Further, Defendant Wexford, alternatively, through the final policymaking decisions of Dr. Borowicz and Defendant Jane Doe, whether singular or plural, had a policy, practice, or custom of refusing to house inmates in the infirmary, like Mr. Cordell, whose physical condition clearly required such housing.

74. As a direct and proximate result of Defendant's malice, reckless indifference and/or deliberate indifference to Mr. Cordell's medical needs, on its own or, alternatively through the final policymaking decisions of Dr. Borowicz and Defendant Jane Doe, whether singular or plural, his physical condition deteriorated, his injuries were exacerbated, he was subjected to pain and suffering, and he subsequently died.

## COUNT III: VIOLATION OF 42 U.S.C. 1983- DELIBERATE INDIFFERENCE

75. Plaintiff adopts and re-alleges paragraphs 1-2, 6-8, 10, 18-21, 26-35, and 44-56 of this Complaint as if fully set forth herein.

76. This Count applies to Defendants Cargile and John Doe.

77. As described more fully above, Defendant Cargile had actual knowledge that Mr. Cordell was being repetitively beaten and his family was being extorted to keep him alive.

78. More specifically, Plaintiff called Defendant Cargile directly every day for approximately a month. Her pleas for help were routinely ignored, and she was often sent to Defendant Cargile's voicemail. Even when she was only able to leave a voicemail, Plaintiff left a detailed message urging her to act.

79. Defendant Cargile knew or should have known of the serious risk of harm Mr. Cordell faced if he was not moved or transferred from his living assignment or if the fellow inmates who beat him were not separated from him.

80. Despite such knowledge, Defendant Cargile consciously disregarded the risk to Mr. Cordell's safety and well-being when she failed to intervene altogether to ensure that he was not continuously subjected to brutal beatings by other inmates.

81. As described more fully above, Defendant John Doe had actual knowledge of Mr. Cordell's physical deterioration as he was carried to the dining hall and infirmary for medical attention by other inmates. Despite Defendant John Doe's knowledge, whether singular or plural, he turned Mr. Cordell's weak body away and would not allow him to gain nourishment or medical attention.

82. As a direct and proximate result of Defendant Cargile and John Doe's malice, reckless indifference and/or deliberate indifference to Mr. Cordell's safety, he sustained substantial physical injuries, drastic physical deterioration, and death.

## COUNT IV: VIOLATION OF 42 U.S.C. 1983 – FAILURE TO PROTECT

83. Plaintiff adopts and re-alleges paragraphs 1-2, 7-8, 10, 18-21, 26-35, and 47-56 of this Complaint as if fully set forth herein.

84. This Count applies to Defendant Cargile.

85. Pursuant to the Eighth Amendment of the United States Constitution, Mr. Cordell had a clearly established right to be free from substantial harm while in the custody of the state.

86. A Constitutional duty of care arises when an individual's liberty is restrained through affirmative action of the state to exercise power over him, preventing that individual from taking action himself.

87. From August of 2022 until November of 2022, Defendant Cargile wholly failed to protect Mr. Cordell.

88. As Warden, Defendant Cargile, had the authority and obligation of separating Plaintiff from the inmates who constantly and repetitively abused, assaulted, and extorted him.

89. Defendant Cargile knew or should have known, based on Plaintiff's repeated pleas for help, that Mr. Cordell was suffering and at a heightened risk of serious harm, and even death, if she did not intervene.

90. Defendant Cargile failed to take any action to ensure Mr. Cordell was separated from the inmates that were physically abusing him.

91. As a direct and proximate result of Defendant Cargile's malice, reckless indifference and/or deliberate indifference to Mr. Cordell's safety and well-being, he sustained substantial physical injuries, drastic physical deterioration, and death.

**STATE CLAIMS**

**COUNT V: VIOLATION OF ALA. CODE § 6-5-410 –
WRONGFUL DEATH**

92. Plaintiff adopts and re-alleges paragraphs 1-56 of this Complaint as if fully set forth herein.

93. This Count applies to all Defendants.

94. While under the supervision of Defendant Cargile, Mr. Cordell was subjected to routine beatings at the hands of other inmates that went ignored. Defendant Cargile was noticed by Plaintiff that Mr. Cordell required her intervention, but she wholly failed to act and separate Mr. Cordell from the inmates who beat and extorted him for well several weeks.

20

95. Even more, Defendant John Doe turned Mr. Cordell, who was being physically carried by other inmates to the infirmary and the dining hall, away and disallowed him to obtain medical treatment and nourishment though he clearly required it.

96. Finally, Defendant Wexford, on its own, or in the alternative, through Defendants Borowicz and Jane Doe, had actual knowledge of Mr. Cordell's history of epilepsy and need for heightened medical care. However, after being repeatedly beaten and exhibiting signs of trauma and deterioration, these Defendants provided Mr. Cordell with little-to-no care, thereby exacerbating his injuries and pain and suffering.

97. Because of Defendants' collective failure, Mr. Cordell had no meaningful chance of survival once he was transported to Baptist South on November 24, 2022. Mr. Cordell's quick and unfathomable physical deterioration was proximately caused by Defendants.

98. As a result of Defendants' actions and omissions to act, Mr. Cordell was pronounced dead on December 17, 2022.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests the entry of judgement against Defendants, jointly and severally, pursuant to an order awarding the following:

a. Compensatory damages, jointly and severally, for emotional distress, pain and suffering, inconvenience, mental anguish, and special damages in an amount to be determined by a jury;

b. Nominal damages in an amount to be determined by a jury;

c. Punitive damages in an amount to be determined by a jury;

d. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

e. All other and further monetary and/or equitable relief as this Honorable Court may deem just and proper.

## **JURY DEMAND**

Plaintiff requests a trial by struck jury on all issues so triable.


Respectfully submitted this 16th day of December 2024.

*/s/ Kristen E. Gochett*
Leroy Maxwell, Jr.
Kristen E. Gochett
*Attorneys for Plaintiff*



**OF COUNSEL:**
**Maxwell & Tillman**
1820 3rd Avenue North, Suite 300
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
maxwell@mxlawfirm.com
kgochett@mxlawfirm.com

## <u>DEFENDANTS SERVED VIA PROCESS SERVER AND/OR CERTIIED</u> <u>MAIL.</u>

**Carmen Cargile**
Served via process server

**Wexford Health Sources, Inc.**
c/o Prentice Hall Corporation System, Inc.
641 South Lawrence Street
Montgomery , AL 36104

**Michael Borowicz, MD**
2690 Marion Spillway Road
Elmore, AL 36025

*/s/ Kristen E. Gochett*
OF COUNSEL